

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO 1300 L Street, NW Washington, DC 20005<br><br>and<br><br>BRIDGEPORT CONNECTICUT AREA LOCAL, APWU<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE, 475 L'Enfant Plaza, SW Washington, DC  20260,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 3:D9CVL4RNC

Temporary Restraining Order Requested

January 16, 2009

## COMPLAINT

### INTRODUCTION

1. This is a suit to enforce a collective bargaining agreement between the American Postal Workers Union, AFL-CIO (the APWU) and the United States Postal Service (USPS or the Postal Service).  Plaintiffs seek injunctive relief requiring t the Postal Service to maintain the status quo pending arbitration of a labor dispute between the parties, on the grounds (1) that injunctive relief is necessary to defend the integrity and effectiveness of the arbitration process, and (2) that the Postal Service is violating a

contractual provision it has expressly agreed to continue in effect.

2.  The Postal Service has notified the Union that it intends to shut down its incoming mail processing operation in Bridgeport and transfer that operation to Stamford, CT.  The machinery used by the Postal Service to process this mail will be broken down and transported to Stamford and to Syracuse, NY, where it will be reassembled and used in mail processing operations.  The breakdown and transfer of this machinery is to begin on Saturday, January 17, 2009.

3.  The Union has filed a grievance under the parties' collective bargaining agreement and is seeking to expedite the processing and arbitration of that grievance. Without the protection of an injunction,  however, the machinery and mail processing operations will have been transferred from Bridgeport; the mail processing operations in dispute will have been shut down; and postal employees represented by the Union will have been reassigned to other positions.  As a practical matter, the right of the Union to obtain a remedy in arbitration for the violation of its collective bargaining agreement will have been nullified because it will be impossible for an arbitrator to provide an effective remedy for these actions taken in violation of the parties' agreement.

4.  These actions by the Postal Service also violate Section 302(c)(3)(D) of the Postal Accountability and Enhancement Act (the PAEA), Pub.L. 109-435- Dec. 20, 2006; violate commitments the Postal Service has made to the Postal Regulatory Commission and to Congress; and contravene explicit direction provided to the Postal Service by the Office of Inspector General of the Postal Service.

## JURISDICTION AND VENUE

2

5.  This Court has jurisdiction under 39 U.S.C. §§ 409(a) and 1208(b); and under 9 U.S.C. § 4; and 28 U.S.C. §§ 1331 and 1339.

6.  Venue is proper pursuant to 39 U.S.C. § 1208(b), and 28 U.S.C. §1391(b) and (e); and under 9 U.S.C. § 4.

## PARTIES

7.  Plaintiff American Postal Workers Union, AFL-CIO (the APWU), is an unincorporated labor organization with its offices at 1300 L Street, N.W., Washington, D.C. 20005.  The APWU is a party to three collective bargaining agreements with the Defendant United States Postal Service and represents, for purposes of collective bargaining, approximately 250,000 employees of the Defendant.  APWU is also a very large user of the United States Mails.

8.  Plaintiff Bridgeport Connecticut Local of the APWU is an unincorporated labor organization and a chartered local of the APWU with jurisdiction under the APWU Constitution and Bylaws to represent postal employees under the APWU's collective bargaining agreements with the Postal Service in the geographical area in and around Bridgeport, Ct.  The Bridgeport Local is a substantial user of the U.S. Mails.

9.  Respondent United States Postal Service (hereinafter "USPS", "Postal Service" or "the Employer") is, pursuant to 39 U.S.C. §201, "an independent establishment of the executive branch of the Government of the United States... ."  The headquarters of the Postal Service is at 475 L'Enfant Plaza, SW, Washington, DC 20260.

## STATEMENT OF FACTS

3

10.  At all material times, Petitioner APWU and Defendant USPS have been parties to collective bargaining agreements providing the terms and conditions of employment of postal employees in the bargaining units represented by Plaintiff APWU at Defendant USPS's various facilities.  One of the parties' agreements, the National Agreement, applies to employees in several bargaining units: Maintenance Employees, Motor Vehicle Service Employees, Clerks, Mail Equipment Shop Employees, and Material Distribution Centers Employees.

11.  The currently effective National Agreement took effect November 21, 2006, and expires at midnight on November 20, 2010.

12.  Postal employees represented by Plaintiffs have, at all material times, been engaged in the operation and maintenance of automated mail processing equipment in Bridgeport, Ct, for the purpose of the sortation or processing of mail in preparation for delivery of that mail in and around Bridgeport.

13.  The Postal Service has an established analytical and public accountability process that it must follow in making a determination to consolidate all destinating mail processing operations from one postal facility into another postal facility.  These procedures are stated in an official postal Handbook called the PO-408.

14.  The PO-408 is a Handbook that directly relates to wages, hours or working conditions of postal employees.  As such it is covered by Article 19 of the National Agreement and is in effect incorporated by reference into the National Agreement. Under Article 19, the Postal Service has agreed, and made an explicit commitment as part of a unique bargain, that all such postal handbooks and manuals, including the PO-

4

408 "shall be continued in effect except that the employer will have the right to make changes that are not inconsistent with this agreement and that are fair, reasonable and equitable." Article 19 spells out a procedure by which the Postal Service can make handbook changes and by which the Union may challenge those changes.

15. Under the PO-408, the Postal Service is required to conduct a study called an Area Mail Processing Study (AMP) for the purpose of determining whether to consolidate mail processing operations. This process includes a detailed analysis followed by explicit public announcements concerning the AMP study and an opportunity for public participation in the consideration of the consolidation. The Postal Service is required to consider the public interest and the expressed concerns of citizens who may be adversely affected by the consolidation.

16. Under the Postal Accountability and Enhancement Act (PAEA), Section 302(c)(3)(B), the Postal Service was required to develop and submit to Congress procedures the Postal Service will use to rationalize its mail processing system that would—

(i) provide adequate public notice to communities potentially affected by a proposed rationalization decision;

(ii) make available information regarding any service changes in the affected communities, any other effects on customers, any effects on postal employees, and any cost savings;

(iii) afford affected persons ample opportunity to provide input on the proposed decision; and

5

'        (iv) take such comments into account in making a final decision.

17. In response to this requirement the Postal Service submitted to Congress in June 2008 its "Postal Accountability and Enhancement Act § 302 Network Plan." That Plan expressly commits the Postal Service to employ its PO-408 AMP process to analyze potential mail processing consolidations and to communicate with the public and with postal employees.

18. In 2006, the Postal Service reported to the Postal Rate Commission (now the Postal Regulatory Commission)(PRC)  that the Postal Service had developed a plan for making changes in its mail processing and delivery network that might have a significant impact on service.  Accordingly, the PRC opened a case, Case No. N2006-1, to hold hearings, take evidence, and provide recommendations on the Plan, in accordance with the Postal Reorganization Act , 39 U.S.C. § 3661.  As part of that process, the PRC evaluated the PO-408 and the AMP process under that Handbook and made recommendations for improving the provision of information to the public and the involvement of the public in making consolidation decisions.

19. On or about September 5, 2008, the Postal Service informed the Unions that it was considering consolidating all destinating mail processing operations from Bridgeport into Stamford.  The Union reminded management that it must first conduct an AMP study and otherwise comply with the notice and consultation procedures of the PO-408.

20. On or about January 9, 2009, the Postal Service informed the Unions that it had decided to consolidate all destinating mail processing operations from  Bridgeport

6

into Stamford, to dismantle and remove to Stamford or Syracuse, NY, the four Delivery Bar Code Sorter machines that are being used to process destinating mail in Bridgeport, and to reassign mail processing clerks and maintenance employees from Bridgeport who are working on those machines.

21.  The Postal Service announced that the clerks affected by this consolidation may be reassigned up to 100 miles from Bridgeport;  and the affected maintenance employees may be excessed up to 500 miles from Bridgeport.

22.  In Bridgeport, some of the most senior clerks are working as DBCS operators in the positions that will be eliminated by the Postal Service.   Some of these clerks will be reassigned into positions, such as window clerk positions, where they will be required to learn very technical information that is difficult to learn.  If they fail to become proficient at their new duties, they may be exposed to the possibility of discipline up to and including removal from the service.  Some of these employees may decide to retire rather than be reassigned or be required to learn new skills.

23.  The Postal Service has not performed an AMP study to determine the likely effect of the consolidation of all destinating mail processing operations from  Bridgeport into Stamford on service, cost or the public interest, nor has it complied with the public communication requirements of the PO-408.

24.     Under Article 15 of the National Agreement, a grievance is defined as "a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment."

25.  Under Article 15 of the National Agreement, the parties have agreed to a

7

three or four step grievance procedure leading to final and binding arbitration to resolve grievances arising under the National Agreement.

26.  The Union has filed a grievance protesting the fact that the Postal Service made a decision to consolidate all destinating mail processing operations in Bridgeport into Stamford without following the PO-408 procedures.  Because the Postal Service is beginning to dismantle and move the equipment and to reassign the affected employees, the machines will all have been moved and the employees will have been reassigned before the grievance can be decided by an arbitrator.

27.  By its actions described above, the Postal Service has violated the parties' collective bargaining agreement.

28.  Because the Postal Service has committed to maintain the PO-408 in effect unless it is changed in accordance with Article 19, there is no effective remedy at law for a violation of that commitment.

29.  After the mail processing machines have been removed from Bridgeport and transported for use in Stamford and Syracuse, and the employees have been reassigned, the arbitrator assigned to adjudicate the grievance filed by the Union to protest these violations will be unable to construct a full and meaningful remedy for the impact the contract violations committed by the Postal Service will have on employees represented by the Unions.  Thus, the arbitration process will have been rendered a nullity, the Union will have been deprived of the value of its bargain, and the Union and the employees it represents will have suffered irreparable harm.

8

30.  Under the Postal Accountability and Enhancement Act (PAEA), Section 302(c)(3)(B); by virtue of its commitments to the Congress in its June 2008 Report; and by virtue of its commitment to the PRC in Case N2006-1, the Postal Service is required to follow the procedures of the PO-408 in consolidating destinating mail processing operations from Bridgeport to Stamford.  By failing to do so, it has violated the PAEA, violated the rights of the Unions both as unions and as users of the U.S. Mails, and violated the rights of other postal patrons who rely on the Bridgeport postal service..

31.  The Plaintiffs have no adequate remedy at law for these violations of their rights under the PAEA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray  that this Court issue a decision and order:

(1)     Finding that Plaintiffs are likely to succeed in proving a contract violation by defendant in this case;

(2)     Finding that the Plaintiffs and the employees they represent will be irreparably harmed if defendant is permitted to dismantle and remove the mail processing equipment from Bridgeport and reassign the employees who have been operating and maintaining that equipment;

(3)     Finding that the threatened harm to Plaintiffs outweighs any possible harm to defendant from an order requiring defendant to adhere to the requirements of its Handbook PO-408 pending arbitration of the Plaintiff's grievance;

(4)     Finding that the public interest will be served by an order maintaining the status quo until the Plaintiffs' grievance can be arbitrated; and

9

(5)    Ordering that the defendant refrain from dismantling the mail processing

equipment used for processing destinating mail in Bridgeport and refrain from

reassigning employees working on or maintaining those machines until the

Plaintiffs grievance has been arbitrated;

(6)    Finding that defendant has failed to follow the procedure necessary to

establish that any financial savings would result from the consolidation in

question;

(7)    Establishing a nominal bond as security under Fed.R.Civ.P. 65(c);

(8)    Awarding costs, expenses and attorney's fees to Petitioner; and

(9)    Providing such other additional relief as is just and proper.

Respectfully submitted,

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By:_____

Darryl J. Anderson
DC Bar Number 154567
1300 L Street NW Suite 1200
Washington, DC 20005-4178
(202) 898-1707 FAX:(202) 682-9276

_____

Barbara J. Collins
44 Capitol Avenue, Suite 402
Hartford, CT 06106
Tel: (860) 297-6502
Fed. Bar. No.: CT 04634

10